STATE of Alaska, DEPARTMENT OF REVENUE, Appellant,

v.

Darryl J. WALLACE, Appellee.

No. S–11552.

Supreme Court of Alaska.

Sept. 2, 2005.

---

Susan L. Daniels, Assistant Attorney General, Anchorage, Gregg D. Renkes, Attorney General, Juneau, for Appellant.

Omar P. Calimbas, Alaska Legal Services Corporation, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

In 1994 Darryl Wallace was ordered to pay child support at the rate of $50 a month until, in the words of the support order, "he is released [from prison] and obtains employment then Civil Rule 90.3 will be in effect." Another provision of the order similarly stated that "[c]hild support will increase when he is released from jail and obtains employment." Wallace was released from prison and began earning wages in 1997, but initially neither the mother nor the Child Support Services Division (CSSD) tried to obtain more child support from Wallace. It was not until 2004 that CSSD moved to make Wallace liable for increased support. CSSD's motion sought increases not only in future support payments, but also for back child support for the period 1997–2004 when Wallace's higher income would have supported higher payments under the income formulas in Civil Rule 90.3. Wallace argued in response that he could not be liable for support increases for any period prior to CSSD's motion, because an increase would be contrary to the $50 obligation in the original support order, which could not be modified retroactively, per Civil Rule 90.3(h)(2). The superior court agreed, and rejected making the increase effective before the date of CSSD's motion to enforce. CSSD, through the Department of Revenue, appeals. We believe the original order expired by its terms when Wallace was released in 1997, and that therefore neither the order nor Rule 90.3(h)(2) should prevent the superior court from awarding back child support. We therefore reverse.

This appeal turns on the significance of the 1994 order, which is an issue of law reviewed de novo.[1] Civil Rule 90.3(h)(2) states:

*No Retroactive Modification.* Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d) [i.e., where paternity is disestablished, circumstances not present here]. A modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Services Division, is served on the opposing party is not considered a retroactive modification.

The part of the rule that says that a "[c]hild support arrearage may not be modified retroactively" has been taken to mean that CSSD cannot collect "back child support" for payments different from any amounts prescribed in the original child support order, even in cases where the obligation is sought to be increased rather than decreased.[2] Wallace's argument is that the original child support order required him to pay $50 indefinitely, that references to his release from prison merely anticipated that CSSD would move for modification of the order at that time, and that CSSD has attempted to collect back child support in contravention of the order. In response, CSSD argues that the order lapsed upon Wallace's release from prison and does not preclude its motion to

**1.** *Duffus v. Duffus,* 72 P.3d 313, 316 (Alaska 2003); *Crayton v. Crayton,* 944 P.2d 487, 489 n. 1 (Alaska 1997).

**2.** *See, e.g.,* Alaska R. Civ. P. 90.3 cmt. X(B); *Yerrington v. Yerrington,* 933 P.2d 555, 558 (Alaska 1997) ("Although the plain language of the rule applies only to arrearages, we have held that, appropriately interpreted, this rule prohibits both retroactive decreases and increases in child support awards prior to the date the modification motion is served on the opposing party.").

collect back child support from Wallace based on his higher income for the period 1997–2004.

We agree that the original support order applied only so long as Wallace was in prison, and that the order does not preclude increases covering the period following his release. Rule 90.3(h)(2) applies only to attempts to modify a pre-existing order; it does not prevent attempts to collect back child support for periods not covered by any order.[3] The key issue is therefore whether the original order expired when Wallace was released from prison and got a job (in which case the superior court could impose a retroactive obligation as of that date without regard to the order), or whether instead Wallace is right that the order contained an indefinite $50 obligation, and that the "will increase" language merely anticipated a future motion by CSSD to increase the obligation when Wallace was released (in which case any increases could go back only as far as CSSD's 2004 motion). Wallace's reading of the order has some plausibility, but we reject it for two reasons. First, it would rely on an inadvertent slip-up to work a forfeiture of support-obligation increases plainly intended by all involved when the order was first entered. The rule against retroactive modification was

designed primarily to prevent obligor parents from arguing that their support arrearages should not be collected because the obligation should have been lower in the first place.[4] Although we appreciate (as we have already noted) that the rule by its terms also applies to attempts by the custodial parent to retroactively *increase* the obligor parent's support obligations,[5] we are less willing to give obligor parents the benefit of the doubt in construing support orders where doing so would help the obligor parent avoid supporting his or her children to the extent permitted by that parent's resources.[6] Second, we think Wallace's reading of the order is less persuasive than CSSD's, especially in light of our reluctance to short-change Wallace's daughter. The order does not say that Wallace's support obligation may increase, or that it can be increased on CSSD's motion—the order says that the obligation "will" increase, and that Wallace's obligation to pay $50 lasts only "until" he is released and gets a job.[7] This might imply an automatic increase, yet instead the order says that "[n]o automatic increases in child support are ordered." Reading these provisions together, we understand the order as requiring Wallace to pay $50 only "until" he left prison and got a job,

3. *Duffus,* 72 P.3d at 320–21.

4. Rule 90.3(h)(2) is intended to restate a federal statute prohibiting retroactive modification of child support arrearages. *See* Alaska R. Civ. P. 90.3 cmt. X(B); *see also* 42 U.S.C. § 666(a)(9). The Federal Register notice that accompanied issuance of the regulations implementing this statute explains the impetus for the retroactivity rule:

> The vast majority of such retroactive modifications when they occurred had the effect of reducing the amount of child support ordered. Thus, for example, an order for $200 a month for child support, which was unpaid for 36 months, should accumulate an arrearage of $7,200. Yet, if the obligor was brought to court, having made no prior attempt to modify the order, the order might be reduced to $100 a month retroactive to 36 months prior to the date of modification. This has the effect of reducing the arrearage from $7,200 to $3,600. The order could be reduced without placing any diligence requirement on the absent parent to petition in a timely manner to reduce the order, if for some reason his or her ability to comply with the order had changed. Such laws further permitted arguments to be made about changed circumstances in prior periods

> at a time when evidence may not have been easily attained or available. Rebuttal by the obligee, thus, was extremely difficult.

*Prohibition of Retroactive Modification of Child Support Arrearages,* 54 Fed.Reg. 15,758 (1989).

5. *Yerrington,* 933 P.2d at 558; *Boone v. Gipson,* 920 P.2d 746, 749 (Alaska 1996).

6. *See* Alaska R. Civ. P. 90.3 cmt. I(B) ("The primary purpose of Rule 90.3 is to ensure that child support orders are adequate to meet the needs of children, subject to the ability of parents to pay.").

7. The original order explained that it departed from the Civil Rule 90.3 formula for calculating child support because "Darryl is currently in jail and has no income. He agrees to pay $50.00 a month *until* he is released and obtains employment then Civil Rule 90.3 *will be* in effect." (Emphasis added.) Similar language was used in the part of the order explaining why there would be no income withholding: "Darryl has no income and has agreed to pay $50.00 a month. Child support *will increase* when he is released from jail and obtains employment." (Emphasis added.)

and that the order no longer applied at all when those conditions ceased to exist.

In *Karpuleon v. Karpuleon* we discussed the question of whether prospective modifications, suspensions, or terminations written into child support agreements are prohibited retroactive modifications.[8] This question implicated federal law, insofar as Rule 90.3(h)(2) was intended to restate and comply with a federal statute prohibiting retroactive modification of child support arrearages.[9] We quoted the following response of the Department of Health and Human Services to public comments to proposed regulations issued under the federal statute:

> Federal law and regulations do not preclude the States from having laws that permit automatic prospective suspension or prospective termination upon the development of specific circumstances such as the emancipation or death of a child. Such "modifications by operation of law" upon the occurrence of an event known to both parties, if applicable generally to all child support orders in the State, would not appear to contradict the intent of the law.[10]

We held in *Karpuleon* that an agreement that specified that if the parties' child moved in with the non-custodial spouse, the custodial spouse would pay support to her, rather than vice versa, was a permitted "prospective automatic termination and shifting of the obligation" because the details of when it would occur "were sufficiently clear that the parties should be held to their agreement."[11] We also noted that "to the extent our decision becomes binding precedent, it will meet the contemplated requirement of being applicable to 'all child support orders in the State' where similar circumstances exist."[12] We concluded by stating:

> Policy considerations may have dictated a different result if the agreement had not been in writing, or had the timing of the child's change in residence been more nebulous. However, in reaching our decision,

we are merely upholding the written agreement between the parties, as incorporated into the decree of dissolution. We also note that our decision will not cause a retroactive modification of the support obligation, but will merely enforce the shifted obligation, as contemplated in the written agreement.[13]

Here, as with the prospective modification in *Karpuleon,* the circumstances giving rise to the prospective termination—release from prison and subsequent employment—seem sufficiently specific and clear. Further, given the precedential effect of this decision, these circumstances will meet the generally applicable standard mentioned in the federal commentary. We conclude therefore that treating this order as providing for prospective termination does not violate the federal policies underlying the ban on retroactive modifications.

Once it is established that the order expired, *Duffus v. Duffus* makes it clear that Civil Rule 90.3(h)(2) does not preclude CSSD's motion to seek higher support obligations for the period following this expiration.[14] We therefore REVERSE that part of the superior court's order that rejects CSSD's attempt to collect higher support obligations for the period preceding CSSD's motion. We REMAND the case for proceedings to determine what support obligations Wallace should owe based on his income during the period following his release from prison and commencement of employment.

---

8. 881 P.2d 318 (Alaska 1994).

9. *See* Civil Rule 90.3 Commentary § 10; *see also* 42 U.S.C. § 666(a)(9).

10. *Karpuleon,* 881 P.2d at 321 (quoting *Prohibition of Retroactive Modification of Child Support Arrearages,* 54 Fed.Reg. 15,761).

11. *Id.* at 321.

12. *Id.* at 321.

13. *Id.* at 321–22.

14. 72 P.3d at 320–21.