**William Lee BARBER, a contingent beneficiary, Appellant,**

**v.**

**William F. BARBER Sr., Edward G. Barber Jr., individually, and the Fanni Barber Soine Trust, Edward G. Barber, Trustee, Appellees.**

**No. S–4322.**

Supreme Court of Alaska.

Aug. 14, 1992.

Richard G. Haggart, Maloney & Haggart, Anchorage, for appellant.

Gary Foster, Call, Barrett & Burbank, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### INTRODUCTION

William Lee Barber, a contingent beneficiary of the Fanni Barber Soine Trust, challenges the superior court's approval of a settlement agreement which resulted in the termination of the trust over his objection.

### FACTS AND PROCEEDINGS

Fanni Barber Soine created a family trust to benefit her two sons, Edward G. Barber Sr. and William F. Barber Sr., and their wives and children, on January 2, 1956. A second document, entitled "Clarification of Intent of Creator of Intervivos Trust" was executed in June 1967.

The trust instrument named Edward Sr. as the trustee and indicated that upon his death his wife was to succeed him as trustee. Upon his wife's death, trustee powers would pass in turn to their three sons, Edward Jr., Hugh, and Richard. Pursuant to an agreement entered by Edward Sr. and William Sr. in 1968, the trust income would go to Fanni Soine during her lifetime. The trust instrument provided that upon Soine's death (which occurred in 1975) the trust income, minus expenses and trustee's fees of 20% of the trust income after expenses, was to be divided between Edward Sr. and William Sr. In the event that either beneficiary died, his share was to be paid to his wife and after her death, to his surviving children.

Edward Sr. served as trustee from the trust's creation in 1956 until his resignation in December 1979. He was succeeded as trustee by his wife Janet. Janet resigned as trustee on July 8, 1982, two days after Edward Sr.'s death, and was succeeded by Edward Jr. Janet died in 1985. Edward Jr. continued as trustee until he was removed by order of the superior court on May 24, 1990.

In 1987, William Sr. brought a suit against the Trust and his nephew Edward Jr., individually and as trustee, alleging various breaches by Edward Jr. of his fiduciary duties. After trial the superior court found, inter alia, that Edward Jr. breached his duty of care and misused trust funds and that "a non-family institutional Trustee must be appointed." The superior court then appointed Security Pacific Bank (Bank) as the successor trustee, effective August 7, 1990.

In the fall of 1990, the Bank sought the superior court's approval to sell the major real property asset in the trust corpus to Nye Frontier Toyota. Counsel for the Bank explained "in view of the unsettled nature of the estate, we're seeking court approval for the trustee's exercise of discretion ... [T]he question before the court is [whether] the trustee's exercise of discretion [is] reasonable."

At the October 2, 1990 hearing, Hugh and Richard, as designated successor trustees under the trust instrument and beneficiaries under the trust, sought to intervene in the original suit, that resulted in the removal of Edward Jr. as trustee, to object to the appointment of the Bank as trustee. They also objected to the sale of property. William Sr., as party to the original action naming the Bank as trustee objected to the intervention of Hugh and Richard as untimely. The superior court denied the motions to intervene.

Interested parties began to negotiate a settlement concerning the sale of trust real property. Income beneficiaries William Sr., Edward Jr., Richard, and Hugh, were all present and represented by counsel at the negotiations, as was the Bank. Attorney Peter Ginder was present at the negotiations and purported to represent the inter-

ests of all non-income beneficiaries.[1] On October 8, 1990, the superior court held a hearing concerning the positions of each of the parties on the settlement with Judge J. Justin Ripley acting as the settlement judge. Appellant William Lee Barber (William Lee), son of William Sr. and a non-income beneficiary of the trust, was not present but was within the class whose interests attorney Ginder purported to represent. The parties and Ginder all agreed to the settlement. At the October 8 hearing, attorney Ginder indicated to the superior court that he found that the "proposed settlement as it comes together is fair and equitable to all concerned, including the non-income beneficiaries." At this hearing, the superior court approved an order allowing sale of the principal asset of the trust property. A final hearing was scheduled for October 24, 1990 for the purpose of placing the final settlement stipulation on the record.

Before the final hearing, William Lee contacted attorney Ginder and indicated his objection to the settlement. At the October 29 hearing, attorney Ginder acting on behalf of William Lee, withdrew his approval of the settlement agreement. The other parties objected to attorney Ginder's withdrawal of his approval because actions had already been taken in reliance upon the settlement agreement, including the sale of the principal asset in the trust and distribution of trust funds. Despite Ginder's objections, the superior court approved the settlement stating,

It is in the best interest of all vested and/or contingent beneficiaries born or unborn to settle this case and to distribute the corpus of this trust. It is contrary to the basic tenants [sic] of fairness and justice to permit an alleged remainderman or an alleged contingency beneficiary to involve all of the vested and the known contingent beneficiaries in his paternity dispute with one of the vested beneficiaries.

In this case the major asset of this trust has been sold by order of the Court, which is separate from this settlement agreement. The assets that are remaining and even the cash or the value of the sold asset are finite. And, therefore, the only foreseeable consequence of this Court not approving this settlement based upon the claim of the—of Mr. William Lee Barber or an individual who identifies himself to this Court as such through Counsel, is that it would further decrease the corpus of the trust for all of the beneficiaries, and it would increase the costs and the fees to be charged against the trust because it would involve the trust itself in the issue of heir status, if any, of what is before this Court today, merely an alleged contingent beneficiary. And therefore, the Court declines to grant the objection as stated by Mr. Ginder and to deny approval of the settlement on those grounds.

Subsequently, the superior court approved the settlement and the attorneys for the parties, with the exception of Ginder, signed the settlement agreement. William Lee now appeals from the superior court's approval of the settlement.[2]

William Lee argues that the superior court erred in approving the settlement stipulation over his objection founded on lack of notice, in finding that his interests had been represented by attorney Peter Ginder, and in concluding that the settlement was in the best interest of the beneficiaries.

## DID THE SUPERIOR COURT ERR IN OVERRULING WILLIAM LEE'S OBJECTION TO THE OCTOBER 29, 1990, SETTLEMENT STIPULATION?

William Lee argues that the superior court's approval of the stipulation for set-

---

1. Appellant William Lee Barber's beneficial interest under the trust was contingent upon his surviving his father, William F. Barber Sr.

2. The approval of a settlement stipulation is within the discretion of the court. Thus, the standard of review is the clear abuse of discretion standard. *See Pavek v. Curran,* 754 P.2d 1125, 1126 (Alaska 1988); *see also Corkland v. Boscoe,* 156 Cal.App.3d 989, 203 Cal.Rptr. 356, 359 (1984).

The superior court's factual findings are reviewed under the clearly erroneous standard. *Parker v. Northern Mixing Co.,* 756 P.2d 881, 887 n. 11 (Alaska 1988).

tlement deprived him of property without due process of law and violated basic standards of fairness. William Lee further argues that he was stripped of his contingent beneficial interest in the trust without proper notice and opportunity to be heard. Specifically, he asserts that he was not notified of the appointment of attorney Peter Ginder to represent his interests or of the settlement proceedings of October 8, 1990. He further claims that when he learned of attorney Ginder's approval of the settlement in his behalf he requested that attorney Ginder withdraw his approval.[3]

■ William Sr. argues that the settlement was in the best interests of all parties, that attorney Ginder represented William Lee, and that attorney Ginder recognized the necessity of stipulating to the settlement to save trust assets. He also asserts that attorney Ginder approved the settlement on behalf of William Lee and that the other parties relied on his approval and acted in reliance upon it. Therefore, William Sr. contends, "[t]his Court could hardly be presented with a more compelling occasion for the enforcement of an on-the-record, stipulated settlement."[4]

Resolution of this issue centers on the answers to two questions: (1) Did William Lee have an interest deserving of constitutional due process protection? and (2) Was William Lee afforded notice and an opportunity to be heard prior to the superior court's approval of the October 29, 1990 settlement stipulation?

■ We answer the first question in the affirmative. William Lee's interest as a contingent beneficiary was sufficiently definite to warrant constitutional protection.[5] As to the second question, review of the record shows that William Lee was not given notice and an opportunity to be heard prior to the superior court's approval of the October 29, 1990 settlement stipulation.

■ In regard to the superior court's jurisdiction over the internal affairs of trusts,[6] AS 13.36.060 provides in relevant part that proceedings are initiated by filing a petition "and giving notice under AS 13.-06.110 to interested parties." AS 13.06.-050(20) provides that:

'interested person' includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a ... claim against a trust estate....

AS 13.06.050(2) states that:

'beneficiary' as it relates to trust beneficiaries, includes a person who has any present or future interest, vested or contingent....

Given the above it is clear that AS 13.36.-060 required that notice be given to William Lee as an "interested person." This follows because an "interested person" is defined by AS 13.06.050(20) to include beneficiaries and under AS 13.06.050(2) the term "beneficiary" includes a person who has a contingent interest. Since William Lee was not given personal notice of the settlement proceeding of October 8 which led to the superior court's approval of the October 29, 1990 settlement stipulation we hold that the superior court erred in overruling William Lee's objection to the settlement.[7]

---

3. The superior court approved the settlement over William Lee's objections because it viewed the settlement as being in the best interests of the beneficiaries and because actions had been taken in reliance upon the stipulated settlement.

4. William Sr. cites authority for the proposition that "[w]hen a stipulated settlement is made in open court, recognized by the Court, and there is no dispute as to its material terms, the stipulation is enforceable." *Murphy v. Murphy*, 812 P.2d 960, 965 (Alaska 1991); *Kerslake v. Kerslake*, 609 P.2d 559, 560 (Alaska 1980); *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 106 (Alaska 1977). This legal rule is inapposite

where, as in the instant case, not all the parties have agreed to the stipulation.

5. For example William Lee's consent would be required before a termination by consent of beneficiaries could be effected. Section 337 *Restatement (Second) of Trusts*.

6. *See* AS 13.36.035.

7. Inherent in our holding is the conclusion that attorney Ginder did not represent William Lee. First, William Lee had no notice of attorney Ginder's appointment purportedly representing his interests prior to the October 8, 1990 hearing. Ginder was appointed in 1988 by Judge

## CONCLUSION

The superior court erred in overruling William Lee Barber's objections to the settlement stipulation. REVERSED and REMANDED for further proceedings consistent with this opinion.

Shortell to serve as the guardian ad litem for the unborn and unascertained heirs of Richard Barber in a companion case concerning the inclusion of the trust assets in the property division in the divorce of Richard and Faith Barber. In the October 8 hearing, Ginder indicated that his representation had been broadened,

> Your Honor ... at the time of our last meeting asked that I assist and participate in the settlement discussions which you had mandated, and that I look after the interest of the non-income beneficiaries to the extent that their interest could be protected. I agreed to do so.

At the October 8 hearing, upon the request of the Bank, the court made a finding of fact that Ginder adequately represented the interests of all non-income beneficiaries. Neither William Lee nor his attorney was present at that hearing. Second, since there is no indication in the record that William Lee Barber is incompetent the superior court lacked statutory authority to appoint a guardian ad litem to represent William Lee. In this regard, AS 13.06.120 provides in part:

> In formal proceedings involving trusts or estates of decedents ... and in judicially supervised settlements. . . .
>
> . . . .
>
> (4) At any point in the proceeding, a court may appoint a guardian ad litem to represent the interest of a minor, an incapacitated, unborn, or unascertained person, or a person whose identity or address is unknown, if the court determines that representation of the interest otherwise would be inadequate;