William Lee BARBER, a Contingent Beneficiary, Appellant and Cross–Appellee,

v.

Marjorie BARBER, Personal Representative of the Estate of William F. Barber, Sr., Appellee and Cross–Appellant,

and

Bank of America, Trustee of the Fanni Barber Soine Trust, Appellee.

No. S–6090/6550.

Supreme Court of Alaska.

May 3, 1996.

Richard G. Haggart, Maloney & Haggart, Anchorage, and Mark R. Davis, Anchorage, for Appellant and Cross–Appellee.

Gary Foster, Fairbanks, for Appellee and Cross–Appellant Marjorie Barber.

Robert L. Manley, Hughes Thorsness Gantz Powell & Brundin, Anchorage, for Appellee Bank of America Alaska.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

In a prior decision, *Barber v. Barber,* 837 P.2d 714 (Alaska 1992) (*Barber I*), we remanded this case to the superior court to afford William Lee Barber, a contingent beneficiary of the Fanni Barber Soine Trust, notice of a settlement proceeding and an opportunity to present his objections to the settlement agreement which resulted in termination of the trust. This appeal asks this court to determine whether William Lee was entitled to intervene in the proceedings on remand, whether William Lee had the right to peremptorily challenge the judge, whether the superior court erred in failing to issue a judgment on William Lee's appellate costs and attorney's fees, whether the superior court erred in overruling William Lee's objections to the settlement and in concluding that the trustee did not abuse its discretion in terminating the trust,[1] and whether certain awards of attorney's fees and costs were proper.

### II. FACTS AND PROCEEDINGS

#### A. Facts and Proceedings Relating to this Court's Decision in Barber I

Fanni Barber Soine created a family trust on January 2, 1956, by executing a "Declaration of Trust." She executed a second document entitled "Clarification of Intent of Creator of Intervivos Trust" in June 1967. The beneficiaries were her two sons, Edward G. Barber Sr. and William F. Barber Sr., and their wives and children.

The trust instrument named Edward Sr. as the trustee and indicated that upon his death his wife was to succeed him as trustee. Upon his wife's death, trustee powers would pass in turn to their three sons, Edward Jr., Hugh, and Richard. Pursuant to an agreement entered into by Edward Sr. and William Sr. in 1968, the trust income would go to Fanni Soine during her lifetime. The trust instrument provided that upon Soine's death

---

1. Because this case is remanded, we do not ulti-    mately reach this issue.

(which occurred in 1975) the trust income, minus expenses and trustee's fees, was to be divided between Edward Sr. and William Sr. In the event that either beneficiary died, his share of the income was to be paid to his wife and, after her death, to his surviving children.

Edward Sr. served as trustee from the trust's creation in 1956 until his resignation in December 1979. He was succeeded as trustee by his wife Janet. Janet resigned as trustee on July 8, 1982, two days after Edward Sr.'s death, and was succeeded by their son, Edward Jr. Janet died in 1985. Edward Jr. continued as trustee until he was removed by order of the superior court on May 24, 1990.

In 1987, William Sr. brought a suit against the Trust and his nephew Edward Jr., individually and as trustee, alleging various breaches by Edward Jr. of his fiduciary duties. After trial the superior court found, *inter alia*, that Edward Jr. breached his duty of care and misused trust funds and that "a non-family institutional Trustee must be appointed." The superior court then appointed Security Pacific Bank as the successor trustee, effective August 7, 1990.[2]

In the fall of 1990, the Bank sought the superior court's approval to sell the major real property asset in the trust corpus. Counsel for the Bank explained "in view of the unsettled nature of the estate, we're seeking court approval for the trustee's exercise of discretion ... [T]he question before the court is [whether] the trustee's exercise of discretion [is] reasonable."

At an October 2, 1990 hearing, Hugh Barber and Richard Barber,[3] as designated successor trustees under the trust instrument and beneficiaries under the trust, sought to intervene in the original suit, which had resulted in the removal of Edward Jr. as trustee, to object to the appointment of the Bank as trustee. They also objected to the sale of

the property. William Sr., as party to the original action naming the Bank as trustee, objected to the intervention of Hugh and Richard as untimely. The superior court denied the motions to intervene.

Interested parties began to negotiate a settlement concerning the sale of trust real property. Income beneficiaries William Sr., Edward Jr., Richard, and Hugh were all present and represented by counsel at the negotiations, as was the Bank. Attorney Peter Ginder was present at the negotiations and purported to represent the interests of the non-income beneficiaries. On October 8, 1990, the superior court held a hearing concerning the positions of each of the parties on the settlement with Judge J. Justin Ripley acting as the settlement judge. Appellant William Lee Barber,[4] a non-income beneficiary of the trust, was not present but was within the class whose interests attorney Ginder purported to represent.[5] The parties and Ginder all agreed to the settlement. At the October 8 hearing, attorney Ginder indicated to the superior court that he found that the "proposed settlement as it comes together is fair and equitable to all concerned, including the non-income beneficiaries." At this hearing, the superior court approved an order allowing sale of the property which was the principal asset of the trust. A final hearing was scheduled for October 29, 1990 for the purpose of placing the final settlement stipulation on the record.

Before the final hearing, William Lee contacted attorney Ginder and indicated his objection to the settlement. At the October 29 hearing attorney Ginder, acting on behalf of William Lee, withdrew his approval of the settlement agreement. The other parties objected to attorney Ginder's withdrawal of approval because actions had already been taken in reliance upon the settlement agreement, including the sale of the principal asset in the trust and distribution of trust funds.

---

**2.** Bank of America (Bank) later succeeded Security Pacific Bank as trustee.

**3.** Sons of Edward Sr. and Janet Barber, and brothers to Edward Jr.

**4.** Son of William Sr.

**5.** William Lee's interest in the distribution of trust assets upon dissolution was contingent upon his surviving his father, William F. Barber Sr. His interest in trust income was contingent upon his surviving his father and his father's wife, Marjorie.

Despite Ginder's objections, Judge Karen Hunt approved the settlement, stating as follows:

> It is in the best interest of all vested and/or contingent beneficiaries born or unborn to settle this case and to distribute the corpus of this trust. It is contrary to the basic tenants [sic] of fairness and justice to permit an alleged remainderman or an alleged contingency beneficiary to involve all of the vested and the known contingent beneficiaries in his paternity dispute with one of the vested beneficiaries.
>
> ... [T]he Court declines to grant the objection as stated by Mr. Ginder and to deny approval of the settlement on those grounds.

William Lee subsequently appealed from the superior court's approval of the agreement. This court held that the superior court erred in approving the settlement agreement and in finding that William Lee's interests had been represented by attorney Peter Ginder. We stated that "[s]ince William Lee was not given personal notice of the settlement proceeding of October 8 which led to the superior court's approval of the October 29, 1990 settlement stipulation we hold that the superior court erred in overruling William Lee's objection to the settlement." *Barber I*, 837 P.2d at 717. We reversed the superior court's approval of the settlement agreement and remanded the case for further proceedings consistent with this court's opinion.[6]  *Id.* at 718.

### B.  *Facts and Proceedings Following Remand*

This court issued its decision in *Barber I* on August 14, 1992. *Id.* at 714. On October 9, this case was assigned to Judge Brian Shortell upon remand. During a status conference, Judge Shortell informed the parties that he would recommend that the case be reassigned to Judge Hunt. At that time, William Lee requested that the matter be assigned to a different judge. The case was reassigned to Judge Hunt on November 23.

William Lee filed a Notice of Change of Judge on November 24 which was denied as not timely. William Lee filed a motion for reconsideration which was also denied by the superior court.

William Lee also filed a motion to intervene in the superior court proceedings. The superior court denied the motion.

William Lee argued at a December 15, 1992 status conference that the trust continued to exist because the Bank had made termination of the trust dependent upon the superior court's approval, which had been reversed by this court. The Bank argued that the only question on remand was whether it properly exercised its discretion in terminating the trust in 1990. The Bank subsequently filed a "restated petition" seeking court approval of the termination of the trust.

On April 12, 1993, the superior court issued a Notice of Issues in which it noted that this court's opinion in *Barber I* was concerned with William Lee's due process rights to notice and an opportunity to be heard. To this effect, the superior court stated that

> the issue the parties should be prepared to address at the ... hearing is William Lee Barber's objection to the trust settlement stipulation, or whether the trustee of the Fanni Barber Soine Trust reasonably exercised discretion when it sold trust property in October 1990, dissolved the trust, and distributed the proceeds to the vested beneficiaries.

In its Order and Decision, the superior court treated the Bank's restated petition as an initial petition seeking an order declaring that the Bank possessed the discretionary authority to terminate the trust. The court concluded that the trust documents gave the Bank the power to terminate the trust any time that it was "prudent" to do so.

Thereafter, the superior court awarded $12,904.05 in attorney's fees and $1,541.45 in costs in favor of the Bank and against William Lee. The superior court denied William Sr.'s request for attorney's fees.

---

6.  An order was entered awarding appellate attorney's fees in the amount of $1,000.00 and costs to William Lee.

William Lee appeals, and William Sr. cross-appeals.[7]

## III.  DISCUSSION

### A.  The Termination of the Trust in 1990 Was Not Set Aside by this Court's Decision in Barber I

William Lee argues that the termination of the trust was set aside by this court's decision in *Barber I* because the trust was terminated by the superior court's order, which we vacated, rather than by an exercise of the Bank's independent discretion.  In support, William Lee states that the Bank admitted that it would not terminate the trust if the superior court had concluded that termination was not a reasonable exercise of discretion.  He concludes that the trust continued in constructive existence until he was afforded the opportunity to be heard on remand.

■ William Lee's argument misconstrues the scope of the remand.  On remand, William Lee was afforded the opportunity to be heard in order to cure the procedural deficiencies of the proceedings leading up to *Barber I*.  Our decision in *Barber I* did not set aside the termination of the trust.  The superior court was simply instructed to hear and take into account William Lee's objections in its review of the 1990 trust termination proposal for an abuse of discretion by the trustee.

### B.  The Denial of William Lee's Notice of Change of Judge [8]

■ The superior court denied William Lee's notice of change of judge and motion for reconsideration for two reasons.  First, the superior court stated that William Lee was not a party but rather an interested person, and that there is no authority permitting an interested person to file a notice of change of judge.  Second, the superior court

stated that William Lee participated in the October 29, 1990 settlement hearing presided over by Judge Hunt, and that he waived any right to peremptorily challenge Judge Hunt by failing to exercise it at that time.

■ William Lee did not waive his right to peremptorily challenge Judge Hunt.  Civil Rule 42(c)(4) states that a party waives the right to challenge a judge without showing cause by "knowingly participating before that judge."  Alaska R.Civ.P. 42(c)(4); *see Tunley v. Municipality of Anchorage Sch. Dist.*, 631 P.2d 67, 72–73 (Alaska 1980).  In *Barber I*, this court stated that attorney Ginder did not represent William Lee at the October 8 hearing.  *Barber I*, 837 P.2d at 717 n. 7.  After the October 8 hearing and before the October 29 hearing, William Lee contacted Attorney Ginder, and indicated his dissatisfaction with the proposed settlement.  At the October 29 hearing, Ginder withdrew consent to the settlement.

We decline to hold that a person who has not been served notice of a proceeding waives his right to peremptorily challenge a judge by discovering the existence of that proceeding and expressing his dissatisfaction to one of the lawyers.  William Lee did not knowingly participate before Judge Hunt and thus did not waive any right he had to peremptorily challenge the judge.

■ The second ground provided by the superior court for the denial of the peremptory challenge of Judge Hunt was that William Lee was not a party, but only an interested person.  However, as the Bank itself argues, William Lee is a full participant in the proceedings, whose interest in the trust is the focus of the current litigation.  As such, William Lee should not have been denied the right to a peremptory challenge of the judge because of his nominal non-party status.

---

7.  There are two appellees to William Lee's appeal, the Bank and Marjorie Barber, the personal representative of the Estate of William Sr.  We refer to the appellees as the Bank and William Sr.  William Sr. joins the Bank's briefs with regard to all issues but William Lee's contention that the superior court erred in failing to issue a judgment on his appellate costs and attorney's

fees.  Therefore, references to the Bank's positions in this appeal include William Sr.

8.  Whether William Lee has the right to peremptorily challenge a judge under Civil Rule 42 raises a question of law.  This court reviews questions of law *de novo*.  *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

William Lee had the right to one change of judge under Civil Rule 42(c), and did not waive that right under Civil Rule 42(c)(3) or (4). Therefore, it was error to deny his notice of change of judge.

### C. *The Denial of William Lee's Motion to Intervene* [9]

■ The superior court denied William Lee's motion to intervene for two reasons. First, the superior court stated that intervention was unnecessary because William Lee's interests were sufficiently protected by allowing him the opportunity to object to the settlement agreement. Second, the superior court stated that William Lee did not meet the criteria for intervention contained in Civil Rule 24.

■ On remand, William Lee undertook written discovery, took witness and record depositions, filed motions, and participated in the evidentiary hearing on trust termination. Though he was not granted official party status, he participated fully in the proceedings. Thus, we hold that if any error was committed by the superior court in denying intervention, that error was harmless. *See Alaska Christian Bible Institute v. State,* 772 P.2d 1079, 1081 (Alaska 1989); *Hertz v. Cleary,* 835 P.2d 438, 442 n. 4 (Alaska 1992). However, when this case is remanded to allow William Lee to exercise his right to a change of judge, William Lee should be permitted to intervene.

### D. *The Superior Court's Failure to Issue William Lee a Judgment for Appellate Attorney's Fees and Costs*

■ This court awarded William Lee appellate attorney's fees pursuant to Appellate Rule 508(e) and (f)(1). William Lee apparently requested the superior court to issue a judgment for fees and costs. However, no action was ever taken on this motion. Wil-

liam Lee argues on appeal that the superior court's failure to take action on the award of appellate fees and costs was error.

The superior court did not err in failing to issue judgment on the award of appellate fees and costs. This court enters judgment on its own awards of fees and costs. Alaska R.App.P. 508(e). Action of a judge·of the superior court is unnecessary to obtain a writ of execution from the clerk of the trial court on this court's award of appellate costs and fees. Alaska R.App.P. 508(h).

### E. *The Award to the Bank of Attorney's Fees and Costs* [10]

■ The superior court awarded the Bank attorney's fees in the amount of $12,-904.05 and costs in the amount of $1,541.45 following the proceedings on remand. To this effect, the superior court stated as follows:

> [William Lee] is an "interested person" under AS 13.06.050(20) and the Supreme Court directed the trial court to consider his objections to settlement proceedings which included termination of the trust. His objections included that [the Bank] abused its discretion and breached its duties to him, a contingent beneficiary. He is, by statute, a party whose interests have been considered as the Supreme Court ordered. He is, however, not the prevailing party. Costs and fees are awarded against him, therefore.

■ Though it is true that William Lee was not a prevailing party, it was error to hold that the trustee Bank was. This is not a case where the trustee was sued for breach of fiduciary duty. Instead, the trustee was a neutral party, seeking to establish in advance that a particular course of action was proper and in the best interests of all the beneficia-

---

9. This court reviews a superior court's denial of a motion to intervene for an abuse of discretion. *State v. Weidner,* 684 P.2d 103, 113 (Alaska 1984).

10. This court reviews the superior court's determination as to which party is the prevailing party for an abuse of discretion. *Apex Control Sys. v. Alaska Mechanical, Inc.,* 776 P.2d 310, 314 (Alaska 1989). However, the issue of whether a trust-

ee in this kind of proceeding can be considered a prevailing party for the purposes of Civil Rule 82 is a question of law. This court reviews questions of law on a *de novo* standard. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979). Under this standard our duty is "to adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Id.*

**1210**

ries to the trust.[11] As such, beneficiary input regarding the proposed course of action cannot be contrary to the trustee's interests. Consequently, an award of fees against the beneficiary and to the trustee is unjustified. *See* Bogert, Trusts & Trustees § 559 at 170 n. 42 (2d ed. 1980) (citing *Old Nat'l Bank & Trust Co. v. Hughes,* 16 Wash.2d 584, 134 P.2d 63 (1943)). This is not changed by the fact that, because of procedural error in this case, the distribution of trust assets was premature, and the beneficiary input came after the distribution.

### F. The Superior Court's Denial of Attorney's Fees to William Sr.

William Sr. cross-appeals from the superior court's denial of his motion for attorney's fees against William Lee. Since this case is being remanded for further proceedings, that denial is vacated.

## IV. CONCLUSION

We hold there was no error by the superior court in failing to issue a judgment on William Lee's appellate costs and attorney's fees. However, the superior court erred in denying William Lee the right to one change of judge. We therefore REVERSE the denial of William Lee's notice of change of judge, VACATE the judgment of the superior court, and REMAND for further proceedings consistent with this opinion.

MOORE, Chief Justice, not participating.

---

**11.** The nature of the proceeding initiated by the Bank is described in Restatement (Second) Trusts §§ 220 and 259 (1959). Section 220 states: "The beneficiary may be barred by a decree of a proper court from holding the trustee liable for a breach of trust." Section 259 states: "The trustee is entitled to apply to the court for instructions as to the administration of the trust if there is reasonable doubt as to his duties or powers as trustee."