STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,

v.

Sanda LEITCH, Appellee.

No. S–8680.

Supreme Court of Alaska.

April 14, 2000.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellant.

No appearance by Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

The question in this case is whether the Child Support Enforcement Division may seek prospective modification of a child support order where a de facto change of custody has occurred. The superior court ruled that CSED lacked statutory authority to do so. We conclude that such authority exists and therefore reverse.

### II. FACTS AND PROCEEDINGS

Thomas McKinnon and Sanda Leitch are parents of a minor child. In March 1993 the superior court found that Sanda had primary physical custody of the child and ordered Thomas to pay child support. Notwithstanding the order, Thomas assumed physical custody of the child for various periods and received public assistance on behalf of the child during these periods.

The Child Support Enforcement Division (CSED) moved for interim modification of the child support order in order to facilitate recovery of future payments from Sanda. CSED did not seek a change of custody but asked for $50 per month from Sanda "while the child receives public assistance" with Thomas. The superior court denied CSED's motion, concluding that CSED lacked the statutory authority to seek modification

against an obligee under an existing support order.  CSED has appealed.

## III.  *DISCUSSION*

### A.  *Standard of Review*

■ Because the question of whether the trial court properly denied CSED's motion for modification turns on statutory interpretation, we review the issue de novo.[1]  In interpreting a statute, we will adopt the rule of law "most persuasive in light of precedent, reason and policy."[2]

### B.  *Does AS 25.27.045 Authorize CSED's Motion for Modification?*

The superior court denied CSED's motion to modify the order on the ground that the agency could only act on its own if the "obligor" were liable to the state for public assistance reimbursement.  Since under the existing order Thomas—not Sanda—is the obligor, the court concluded that CSED lacked the statutory authority to seek modification.

Alaska Statute 25.27.045 provides in relevant part:

The agency may appear in an action seeking an award of support on behalf of a child owed a duty of support ... and may also appear in an action seeking modification of a support order, decree or judgment already entered.  Action under this section may be undertaken upon application of an obligee, or at the agency's own discretion if the obligor is liable to the state under AS 25.27.120(a) or (b).

CSED contends that the term "obligor" in AS 25.27.045 includes "any noncustodial parent potentially liable to the state."  CSED argues that the superior court's ruling leaves CSED powerless to obtain public assistance reimbursement from a noncustodial parent

where the parents have switched custody without modifying a governing child support order.  This result, argues CSED, conflicts with CSED's rights as an assignee of a public assistance applicant "to accrued and continuing child support."[3]

■ We substantially agree with CSED's position.  It is consistent with the statutory definition of "obligor" as "a person owing a duty of support."[4]  A "duty of support," in turn, "includes a duty of support imposed or imposable by law, [or] by a court order...."[5]  Thus, the term "obligor" is not limited to those parents subject to an existing court order but also includes parents owing a duty imposable by a court order.

■ Sanda potentially falls within this description.  Whether a duty of support will actually be imposed on her can only be determined after she has an opportunity to be heard on the merits of CSED's claim.  Since actual imposition can only occur after proceedings on the merits, potential imposition is all that can be required when determining CSED's authority to bring a modification proceeding.  Thus, CSED was authorized under section .045 to initiate this modification proceeding at its "own discretion."

Our conclusion on this point is also consistent with the statutory system under which CSED operates.  CSED has the authority to collect from noncustodial parents reimbursement of public assistance paid for children.[6]  It is the assignee of "all rights to accrued and continuing child support"[7] of public assistance applicants; it is the subrogee "to the rights of the obligee" and, as such, may seek and enforce orders of support;[8] and it has a direct independent claim against obligors for reimbursement.[9]  CSED also has extraordinary powers to collect public assistance reimbursement, including lien rights against "all

1.  *See Hendren v. State, Dep't of Revenue,* 957 P.2d 1350, 1351 (Alaska 1998).

2.  *Id.*

3.  AS 47.27.040.

4.  AS 25.27.900(9).

5.  AS 25.27.900(5).

6.  *See* AS 25.27.140(a).

7.  AS 47.27.040(a).

8.  *See* AS 25.27.130(a).

9.  *See* AS 25.27.120(a); *see also State, Dep't of Revenue v. Green,* 983 P.2d 1249, 1253 (Alaska 1999) ("An independent right of recovery is created by AS 25.27.120(a).").

real and personal property" of a debtor,[10] the right to proceed against a debtor's occupational and driver's licenses,[11] and the right to order third parties to withhold and deliver a debtor's property under their control.[12]

In view of this broad authority and power, we do not believe that the legislature intended to bar CSED from seeking modifications of child support orders in cases of de facto custody changes. Unless CSED can seek modification in such cases, there is a good chance that no one will do so. Without modification, there can be no collection of public assistance reimbursement. The obligee under the order (here Sanda) has no incentive to seek modification, since she will be liable after the modification. The obligor under the order (here Thomas) may lack the incentive to seek modification because he is receiving public assistance and payments received after the modification will be applied first to reimburse CSED.

We conclude, based both on the statutory definition of the relevant terms and on inferences drawn from the statutory structure, that CSED has the authority to seek the modification of support orders in cases of de facto custodial change.

In its ruling, the trial court understandably relied on *Hendren v. State, Department of Revenue.*[13] Like the present case, *Hendren* involved a de facto change of custody and an order requiring the original noncustodial parent to pay child support.[14] We held that CSED could not obtain reimbursement from the obligee under the child support order for public assistance already paid.[15] There were two main reasons for this conclusion. First, "[t]he term 'obligor' in AS 25.27.120(a) refers to the parent who is required to pay child support under a court order."[16] Second, what CSED sought "constitutes a[n] [imper-missible] retroactive modification of the original order."[17]

We believe that *Hendren* was correctly decided based on the second reason. The first reason was correct as to one usage of the term "obligor" in subsection .120(a), but we were mistaken in applying it to all usages of the term.

In *Hendren,* CSED sought reimbursement under AS 25.27.120(a) which provides in relevant part:

An obligor is liable to the state in the amount of assistance granted under AS 47.07 and AS 47.27 to a child to whom the obligor owes a duty of support except that, if a support order has been entered, the liability of the obligor for assistance granted under AS 47.25.310–47.25.420 may not exceed the amount of support provided for in the support order. . . .

CSED argued that the obligee under the order could also be the "obligor" as that term is used in subsection .120(a) based on the general definition of "obligor" set out in section .900 ("a person owing a duty of support").[18] We rejected this argument based on the language of subsection .120(a), which "limits the obligor's liability to the amount of support required by the support order."[19] The term "obligor" used in the liability limiting clause of subsection .120(a) necessarily refers to "the parent who has been ordered to pay child support."[20] Only an existing order can provide a basis for this limitation. But the other usages of "obligor" in subsection .120(a) are not tied to an existing order. We erred in concluding that this narrow meaning also applies outside the context of the liability limiting clause. Except where the context requires otherwise, we believe that "obligor" should be understood in the broader sense of the statutory definition.

---

10. AS 25.27.230.

11. *See* AS 25.27.244, .246.

12. *See* AS 25.27.250.

13. 957 P.2d 1350 (Alaska 1998).

14. *See id.* at 1351.

15. *See id.*

16. *Id.* at 1353.

17. *Id.* at 1352.

18. *See id.* at 1351–52.

19. *Id.* at 1352.

20. *Id.* at 1352.

Nothing in section .045 requires deviation from the statutory definition.

Our discussion of the second ground in *Hendren* supports our decision in this case. We made it clear that our decision was limited to efforts of CSED to retroactively modify existing support orders.[21] We encouraged CSED to seek prospective modification of the support order there in question:

> Because the ... order has never been modified, requiring [the obligee under the original order] to reimburse CSED for past assistance constitutes a [prohibited] retroactive modification of the original order.
>
> Although *CSED can seek modification of existing support orders under AS 25.27.045*, the statutory scheme permits retroactive modification only in limited circumstances. [No such circumstances were found to exist.] [22]

In seeking a modification in this case, CSED is doing no more than what this portion of our discussion in *Hendren* indicated it could do.

## IV. CONCLUSION

We REVERSE the superior court's ruling and REMAND for further proceedings consistent with this opinion.

EASTAUGH, Justice, dissenting.

Because I believe that the outcome of this case is governed by AS 25.27.045 and AS 25.27.120(a) and that we correctly interpreted the latter statute as recently as 1998,[1] I dissent.

The dispositive fact here was the 1993 entry of the existing support order. That order requires Thomas to pay Sanda child support and imposes no child support liability on Sanda. Although Sanda and Thomas pe-riodically and informally changed the child's primary physical custody, making Thomas the custodian, they did not modify the 1993 support order.

Thomas, as the child's new custodian, began to receive public assistance. CSED is charged with recovering from a parent owing a support duty the public assistance the state pays to support the child.[2] This case would be perfectly straightforward if no support order had been entered in this case, or if Thomas had obtained an order making Sanda liable for child support. CSED would then be entitled to seek reimbursement from Sanda for the public assistance the state had paid Thomas.

But the entry of the existing support order affects CSED's authority to seek reimbursement from the parent who no longer has custody. Under AS 25.27.120(a), the liability of an obligor to reimburse public assistance "may not exceed the amount of support provided for in the support order."[3] Sanda is not liable for assistance under the existing support order. Consequently, unless that order is modified, Sanda has no possible liability to CSED under subsection .120(a).

Therefore, for CSED to recover from Sanda, the superior court had to enter an order making Sanda liable for child support. Thomas, as the new custodial parent, could have readily obtained such an order, but he did not. Instead, it was CSED which sought entry of an order modifying support and making Sanda liable for support. The legislature gave CSED no authority to obtain such an order. Alaska Statute 25.27.045 only gives CSED authority to seek modification of a support order "at the agency's own discretion *if the obligor is liable to the state under AS 25.27.120(a)* or (b)."[4] Because section

21. *See id.*

22. *Id.* (emphasis added).

1. *See Hendren v. State, Dep't of Revenue*, 957 P.2d 1350, 1351–52 (Alaska 1998).

2. *See* AS 25.27.120; AS 25.27.130.

3. AS 25.27.120(a).

4. AS 25.27.045 (emphasis added). That statute provides in full:

> The agency may appear in an action seeking an award of support on behalf of a child owed a duty of support, or to enforce a spousal support order if a spousal support obligation has been established and if a support obligation, established with respect to a child of that spouse, is also being administered, and may also appear in an action seeking modification of a support order, decree or judgment already entered. Action under this section may be undertaken upon application of an obligee, or at the agency's own discretion if the

.045 gives CSED authority to act only if the obligor "is liable" under subsections .120(a) or (b), it is necessary to determine whether the incipient new obligor "is liable" under those subsections. As we saw above, Sanda "is [not] liable" under subsection .120(a) because the existing support order imposes no support liability on her. CSED therefore has no statutory authority under section .045 to seek modification of the support order on its own application.

We recently considered the effect of subsection .120(a). In *Hendren v. State, Department of Revenue*,[5] we read subsection .120(a) in exactly the manner its words require. The court chooses to limit *Hendren* today, but I think the court correctly interpreted subsection .120(a) when it discussed that statute in *Hendren*.

Subsection .120(a) treats the entry of an existing court support order as a significant event. That treatment is consistent with our own treatment of such orders. In *Turinsky v. Long*,[6] for example, we recognized that despite an informal change of custody, it is the custody order and the corresponding support order which control.[7]

The court gives good policy reasons why CSED should be allowed to seek modification in these circumstances.[8] Those reasons may well justify a statutory amendment, but they do not justify the result reached today. In my view, the superior court correctly interpreted the controlling statutes. I would therefore affirm.

**5.** 957 P.2d 1350 (Alaska 1998).

